IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-CV-

TOMMY ROSS

Plaintiff,

v.

CITY AND COUNTY OF DENVER

Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Tommy Ross ("Ross"), for his Complaint, states as follows:

### I.   JURISDICTION AND VENUE

1. This action is authorized and the jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e-5(f).

2. Venue is proper in this Court as the unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the District of Colorado.

### II.   PARTIES

3. Ross is an African-American male citizen of the United States and a resident of, and domiciled in, the State of Colorado.

4. The Defendant City and County of Denver ("CCD") is a municipality within the State of Colorado.

1

5. CCD currently employs over 20 employees.

6. Within 300 days of the occurrence of the acts complained of below, Ross filed a Charge of Discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission claiming that he was discriminated against on the basis of his race and color.

7. On or about December 4, 2024, Ross received a Notice of Right to Sue from the EEOC.

### IV.    FACTUAL ALLEGATIONS

8. On or about January 24, 2022, Ross was hired by CCD as a background investigator in the Department of Public Safety ("DOS").

9. Ross worked in the Public Safety Human Resources Department performing background investigations of individuals applying for the position of Deputy Sherriff.

10. Obtaining background investigations accurately, thoroughly and quickly is of the utmost importance to the CCD.

11. During his employment with CCD, Ross' skills as an investigator were never questioned.

12. Despite his obviously superior qualifications, Ross was paid less than similarly situated non-African American employees.

13. When Ross questioned CCD about his salary, he was falsely told that he was paid the same as other investigators in the unit.

14 Ross and his peers were all part of the same investigative team and performed substantially the same duties as he performed every function as the other investigators, within the unit, identified to be his peers.

15. Ross was the only African American in the unit, and, despite being the most experienced and possessing an advanced degree, he was the lowest paid investigator among his peers, who performed similar work in the unit

16. In July, 2023, Ross was interviewing an Asian candidate for a Deputy Sherriff position, who he noted was originally from China, and asked the routine question of whether or not he had ever served in the military.

17. When the candidate answered negatively, Ross stated that he thought military service was mandatory for males in China and was informed by the candidate that this was untrue.

18. Ross was also aware that if applicant intentionally or inadvertently omitted any military service from applicant's application the omission could potentially be a discretionary disqualifier.

19. In order to provide applicant with an opportunity to correct any inadvertent omissions, Ross informed applicant that he was aware that military duty was once compulsory for all Chinese citizens.

20. The applicant said at one time military service was compulsory for Chinese citizens, but that military service was no longer compulsory.

21. The applicant then stated he was never in the military and was not asked any further questions regarding his military service.

22. During the exchange, Ross was never rude nor inappropriate with the candidate.

23. Every investigator who has interviewed a foreign national has asked or should have asked the same questions to all applicants regarding military experience and the facts

3

regarding any conversation Ross had with candidate were documented on required standardized form.

24. After the interview, Ross was confronted by his Supervisor, Melissa Peterson about asking the original question and admonished for doing so.

25. Other, non-African American investigators had routinely asked the same questions as Ross, but were not subjected to admonishment.

26. Ross's duties included obtaining and interviewing developed references which is a reference who is not provided by applicant and is oftentimes obtained from references or coworkers provided by applicant.

27. After obtaining the identity of a developed reference for an applicant, Ross contacted the developed reference at work outside of Ross's normal work hours in order to make the interview as convenient as possible for the reference.

28. When he contacted the individual cited as a reference for an interview, that individual requested that the interview be delayed until she had obtained permission from her Supervisor to provide the information requested.

29. Ross was not aware supervisory permission was required in order to be interviewed as a reference and asked the individual to contact him after the reference received permission from references supervisor.

30. Ross immediately ended the interview to allow the employee to obtain his supervisor's permission.

31. Immediately after the above referenced two minute interview, Ross was informed by Peterson that the reference felt pressured and described it as "bullying" and that he faced termination as a result of that interview.

32. When Ross asked for clarification as to what constituted "bullying" for which he was being terminated, Peterson was unable to provide any definition or guidance as to what CCD considered bulling.

33. Ross subsequently received a letter from CCD, citing the work at will policy for his termination.

34. Other similarly situated CCD employees had been accused of misconduct supported by actual facts, and were neither terminated nor reprimanded.

## CAUSE OF ACTION
## RACE DISCRIMINAITON

35. Ross incorporates by reference his factual allegations.

36. Plaintiff Ross, as an African American, is a member of a protected class.

37. During the term of his employment, Ross was performing his job duties in a satisfactory manner.

38. Despite possessing superior qualifications than his peers, Ross was paid less that similarly situated non-African American employees.

39. Ross was subjected to race discrimination, by his supervisors, which was not acted upon by the Defendant.

40. Ross was treated differently than similarly situated non-African American employees.

41. Defendant engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a)(1).

42. Defendant's actions in treating Ross differently than similarly situated non-African Americans, was in violation of 42 U.S.C. § 2000e.

43. The effect of the practices complained of was to deprive Ross of equal employment opportunities and to otherwise adversely affect his status as an employee, based upon his race.

44. The unlawful employment practices complained of above were the intentional acts of Defendant and Defendant's managers and Defendant had actual knowledge of the discrimination and harassment.

45. Defendant took no remedial action to stop the discrimination and disparate treatment and thereby, allowed a hostile, intimidating and offensive work environment to persist.

46. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered past and future wage loss, emotional distress, inconvenience, mental anguish and other non-pecuniary losses.

**WHEREFORE,** Plaintiff Tommy Ross respectfully requests that this Court enter judgment in his favor and against the Defendant City and County of Denver, and award him all relief as allowed by law, including but not limited to, the following:

  a. Actual economic damages as established at trial;

  b. Compensatory damages including, but not limited to, those for future pecuniary losses, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

  c. Punitive damages for all claims allowed by law in an amount to be determined at trial;

  d. Pre-judgment and post-judgment interest at the legal rate;

  e. Attorney's fees and costs; and

  f. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**DATED** this 28th day of February 2025.

**SCOTT F. REESE, P.C.**

**S/ Scott F. Reese**
Scott F. Reese
795 W. Birch Ct., Suite 100
Louisville, CO 80027
(303) 665-4448
**Attorneys for Plaintiff**

Plaintiff's Address:
18298 E. Baltic Place
Aurora, CO 80013